***********
The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Baddour. The appealing party has shown good grounds to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of Deputy Commissioner Baddour.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before Deputy Commissioner Baddour as:
 STIPULATIONS
The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
Hartford Insurance Company is the carrier on the risk.
An employee-employer relationship existed between the parties at all relevant times.
Plaintiff's average weekly wage is $612.00.
On January 13, 1998, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendants. Pursuant to a Form 60 filed on March 10, 1998 and an Opinion and Award by Chrystal Redding Stanback filed January 2, 2001, defendants have paid plaintiff temporary total disability benefits at the rate of $408.02 per week from March 3, 1998 to the present.
Defendants terminated plaintiff's employment on February 26, 1998 and have not extended a job offer to plaintiff since that time.
The parties have stipulated to the admission of plaintiff's medical and vocational rehabilitation records.
8. The following stipulated exhibits were admitted by the parties into evidence at the hearing before Deputy Commissioner Baddour:
(a) Stipulated Exhibit 1: Pre-Trial Agreement
(b) Stipulated Exhibit 2: plaintiff's medical records
(c) Stipulated Exhibit 3: Opinion and Award filed January 2, 2001
(d) Stipulated Exhibit 4: Form 18M signed by Dr. Lestini
(e) Stipulated Exhibit 5: Order filed October 1, 2001
(f) Stipulated Exhibit 6: Order filed November 26, 2001
9. Following the hearing before Deputy Commissioner Baddour, the parties reached an agreement on the first three issues presented in the Pre-Trial Agreement. The only remaining issue for determination before the Commission is whether the Executive Secretary erred in approving the Form 18M completed by Dr. Lestini.
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
At the time of the hearing before Deputy Commissioner Baddour, plaintiff was a thirty-five year old male.
On January 13, 1998, plaintiff was employed by defendants as an electrician and sustained an admittedly compensable injury by accident when he fell ten feet from a scaffold, sustaining injuries to his neck and right shoulder. Defendants accepted the claim pursuant to a Form 60 filed on March 10, 1998.
Following the injury, plaintiff came under the care of Dr. Kenneth Rich, a neurosurgeon. Dr. Rich recommended that plaintiff undergo an anterior cervical fusion.
Defendants sought a second opinion regarding the need for surgery from Dr. William Lestini. Dr. Lestini first saw plaintiff on September 3, 1998. He diagnosed plaintiff with cervical disc disease and herniated discs at C4-5 and C5-6. While Dr. Lestini did not disagree with the recommendation for surgery made by Dr. Rich in September 1998, he thought plaintiff had not pursued all non-operative options. Dr. Lestini was authorized by defendants as plaintiff's treating physician.
Deputy Commissioner Chrystal Redding Stanback filed an Opinion and Award in this case on January 2, 2001, ordering defendants to pay plaintiff temporary total disability compensation beginning January 13, 1999 until plaintiff returns to work or further order of the Commission. Deputy Commissioner Stanback also ordered defendants to pay all medical expenses related to plaintiff's injury by accident on January 13, 1998 and found plaintiff developed intervening deep venous thrombosis (DVT) as a result of his admittedly compensable injury by accident.
6. Dr. Lestini treated plaintiff until March 29, 2001, when plaintiff was released with permanent work restrictions which did not permit him to return to work as an electrician. During the course of this treatment, Dr. Lestini and plaintiff regularly discussed the need for surgery. In December 1999, plaintiff underwent a repeat MRI of the neck, which Dr. Lestini felt showed "fairly impressive moderately large HNP's at C4-5 and C5-6." The HNP at C5-6 had progressed to the point that Dr. Lestini advised plaintiff to monitor his complaints and call immediately if there was any sign of nerve root or spinal cord injury. At this point, Dr. Lestini and plaintiff began talking extensively about operative and non-operative treatment options, including an anterior cervical fusion.Plaintiff decided to continue to pursue non-operative treatment before resorting to surgery on his neck.
7. Plaintiff saw Dr. Douglas J. Martini on February 7, 2000, who performed surgery on plaintiff's shoulder on March 28, 2000.
8. Dr. Martini saw plaintiff for follow up appointments for his shoulder surgery and felt plaintiff had met his goals for treatment of his shoulder on December 22, 2000.
9. Dr. Martini signed a Form 18M Employee's Application for Additional Medical Compensation on April 5, 2001 and assigned plaintiff a 15% permanent partial impairment rating to his right arm. Dr. Martini did not list what future medical care he anticipated plaintiff would need.
10. On March 29, 2001, plaintiff returned to see Dr. Lestini for neck pain and numbness in the C6 dermatome. Dr. Lestini felt plaintiff's symptoms were stable and tolerable, and found plaintiff had reached maximum medical improvement. Dr. Lestini assigned plaintiff a 10% permanent partial impairment rating to his back with restrictions of medium work capacity and no lifting over 35 pounds.
11. On April 28, 2001, Dr. Lestini signed a Form 18M indicating plaintiff would need possible occassional medications, therapy or possibly surgery.
12. On November 26, 2001, Executive Secretary Tracey H. Weaver approved the Form 18M signed by Dr. Lestini.
13. Plaintiff did not return to Dr. Lestini for almost a year. During that period plaintiff participated in vocational rehabilitation and continued to receive weekly compensation.
14. Dr. Lestini saw plaintiff on March 7, 2002 for the same complaints of pain as in March of 2001. Dr. Lestini observed plaintiff had significant degenerative changes, herniations, and ongoing complaints of intermittent pain and weakness. Dr. Lestini again discussed with plaintiff the possibility of surgery, but Dr. Lestini recommended trying to get the pain under control non-operatively before resorting to surgery.
15. Dr. Lestini felt plaintiff was at substantial risk of future medical treatment, including possibly surgery.
16. Plaintiff testified in October 2002 that he was attending community college part-time and working with vocational rehabilitation to find suitable employment.
17. The Full Commission finds based upon the greater weight of the medical evidence that there is a substantial likelihood that plaintiff will need future medical treatment including surgery.
 ***********
Based upon the foregoing stipulations and findings of fact the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-25.1 provides that an application for future medical treatment must be filed within two years of an employer's last payment of medical or indemnity compensation, or plaintiff's right to medical compensation shall terminate. A Form 18M Employee's Application for Additional Medical Compensation may be filed prior to the expiration of the two-year period when it is determined that plaintiff has a substantial risk of the necessity for future medical treatment.Id. N.C. Gen. Stat. § 97-25.1 contains a time limitation after which a Form 18M cannot be filed, but does not prohibit a plaintiff from filing an application before compensation is terminated.
2. In this case plaintiff's injury occurred five years ago and he reached maximum medical improvement as of March 29, 2001. Plaintiff is currently receiving temporary total disability compensation and the filing period under N.C. Gen. Stat. § 97-25.1 has not tolled. Throughout the medical treatment, plaintiff's physicians have continued to recommend neck surgery. Therefore, there is a substantial risk that plaintiff will need future medical treatment, including not only surgery but also medications and therapy. N.C. Gen. Stat. § 97-25.1, N.C. Workers' Compensation Rule 408. However, Commission approval of a Form 18M does not preclude defendants at some point in the future from contesting whether specific medical treatment is causally related to the compensable injury by accident. Parsons v. Pantry, Inc., 126 N.C. App. 540,485 S.E.2d 867 (1997).
3. Based upon the facts in the case at bar, plaintiff's filing of the Form 18M is not premature. However, clearly there may be other cases in which the facts show that the filing of a Form 18M is premature and that the case is not ripe for such a determination. The Commission must decide whether to approve a Form 18M application on a case-by-case basis.
4. As a result of plaintiff compensable injury, plaintiff is entitled to future related medical treatment that is reasonably necessary to effect a cure, give relief or lessen the period of his disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's Form 18M was timely filed and is hereby APPROVED.
2. Defendants shall provide plaintiff with future medical treatment related to his admittedly compensable injury by accident that is reasonably necessary to effect a cure, give relief or lessen the period of his disability.
3. Defendants shall pay the costs.
This ___ day of May 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/kjd